**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Criminal Case No. 16-cr-249-WJM-1

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1.    **DERRICK LUCIUS WILLIAMS JR.**

    Defendant.

---

**ORDER DENYING DEFENDANT'S MOTION FOR REDUCED SENTENCE**

---

This matter is before the Court on Defendant Derrick Lucius Williams Jr.'s Motion for Reduced Sentence (ECF No. 87). For the reasons set forth below, the Motion is denied.

**I. BACKGROUND**

In July 2018, Defendant was convicted pursuant to a guilty plea of possessing child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B) and (b)(2) (Count 1), and transporting child pornography in violation of 18 U.S.C. § 2252A(a)(1) and (b)(1) (Count 2). (ECF No. 69.) The Court sentenced Defendant to a term of imprisonment of 84 months on each of Counts 1 and 2, with those sentences to run concurrently. (*Id.*) On April 24, 2020, Defendant filed the instant Motion for Reduced Sentence. (ECF No. 87.) The Government filed a Response on May 27, 2020 (ECF No. 93), and Defendant filed a Reply on June 3, 2020 (ECF No. 94).

## II.  ANALYSIS

Defendant's Motion is one of a very large number of such motions before the Court seeking release from custody on account of the COVID-19 pandemic, and the particular difficulties that prisoners face when trying to avoid infection in the close-quarters prison environment.  Defendant is incarcerated at FCI Elkton in Ohio, where he asserts that over 400 inmates have contracted the disease, and at least 8 have died from it.  (ECF No. 94 at 2.)  Defendant moves the Court to order his immediate release, or more accurately and specifically, to order his sentence reduced to time served.  In Defendant's Motion, which he filed *pro se*, he argues that the presence of the virus in FCI Elkton, considered with the facility's alleged unsanitary conditions, entitles him to a reduced sentence.  In his Reply, Defendant (at this point represented by counsel) asserts that because he is a Black man and suffers from high blood pressure, he is at a greater-than-normal risk of developing serious complications should he contract COVID-19, and therefore that he should be released from incarceration.

Defendant seeks relief pursuant to 18 U.S.C. § 3582(c)(1)(A)(I), which provides that the Court may reduce his sentence if it finds, subject to certain other conditions, that "extraordinary and compelling reasons warrant such a reduction."  Evaluating Defendant's Motion further requires the Court to consider the factors set forth in 18 U.S.C. § 3553(a) and to determine that a sentence reduction would be "consistent with applicable policy statements issued by the [U.S.] Sentencing Commission" ("Commission").  18 U.S.C. § 3582(c)(1)(A).

The Commission's Application Notes to § 3582 enumerate several "extraordinary

and compelling" circumstances, which Defendant appears to concede do not apply to his present situation. (*See* ECF No. 94 at 3–6.) Defendant argues that, regardless, because he is at a higher-than-average risk of serious complications should he contract the virus, and because the virus has made its presence known at his facility, extraordinary and compelling reasons warrant a reduction of his sentence to time served. The Court disagrees.

First, the factors enumerated in 18 U.S.C. § 3553(a) weigh against granting Defendant the relief that he seeks. At sentencing, the Court found Defendant to have a criminal history category of III (including four felony convictions prior to the crimes charged in this case), with a total offense level of 30. (ECF No. 80 at 11, ¶¶ 7–20.) Defendant's offense level was given a two-point enhancement based on the Court's finding that Defendant had knowingly distributed the child pornography found on his computer. (*Id.* at 6, ¶¶ 17–21.) Defendant's offenses accordingly put him at a guideline sentencing range of 121 to 151 months. (*Id.* at 11, ¶¶ 10–20.) The Court ultimately sentenced Defendant to 84 months, with almost two years of credit for time served in pretrial detention. (*Id.* at 60, ¶¶ 1–7.)

In the Court's view, reducing Defendant's sentence to time served would not be sufficient to adequately reflect the seriousness of the offenses of which he was convicted; nor would such a reduction be sufficient to afford adequate deterrence, specific or general, to the crimes of which Defendant was convicted. Defendant was convicted of being in possession of and transporting thousands of sexually explicit images of minors, including images of girls as young as 6 years old. These are serious and by no means victimless crimes, and this is reflected in Defendant's sentence.

Reducing that sentence today to time served would mean that Defendant would have served less than 48 months of his 84-month sentence.  It is the Court's view that an actual custodial period of this length for an offense this serious in magnitude is insufficient to accomplish the goals of sentencing under § 3553(a)(2).

The Court is also unable to conclude that the current presence of the coronavirus at FCI Elkton is itself an extraordinary and compelling reason under the statute cited to reduce Defendant's sentence to time served.  *See United States v. Rodarmel*, 2020 WL 2840059, at *2 (D. Kan. June 1, 2020) (citing *United States v. Seymon*, 2020 WL 2468762 (C.D. Ill. May 13, 2020) ("[T]he mere presence of COVID-19 in a particular prison cannot justify compassionate release—if it could, every inmate in that prison could obtain release.")).  While Defendant asserts that over 400 inmates have tested positive for COVID-19 at FCI Elkton, as of earlier this week, the Bureau of Prisons ("BOP") reports only 47 active cases of COVID-19 (40 inmates and 7 staff) at the facility.[1]  Moreover, in order to put this number into its proper context, the Court takes judicial notice of the fact that FCI Elkton has a total inmate population of 2,274.[2]  The Court also finds it significant that BOP has taken substantial steps to curtail the spread of the virus generally, and in particular within FCI Elkton.

For example, according to the affidavit of Sarah Dees, the Health Services Administrator of FCI Elkton, rigorous virus screening and testing procedures have been

---

[1] *Coronavirus*, U.S. Bureau of Prisons, *available at* https://www.bop.gov/coronavirus/ (last updated June 15, 2020).

[2] *FCI Elkton*, U.S. Bureau of Prisons, *available at* https://www.bop.gov/locations/institutions/elk/index.jsp (last visited June 15, 2020).

put in place at the facility.  (ECF No. 93-1 at 8–11, ¶¶ 23–35.)  Additionally, inmates and staff receive continuing education as to best practices in preventing transmission of the virus.  (*Id.* at 8, ¶ 20.)  Inmates have access to soap, water, and a sink at all times.  (*Id.* at 12, ¶ 45.)  Housing units are stocked with disinfectants, and correctional staff wear personal-protective equipment and frequently disinfect common areas.  (*Id.* at 13, ¶¶ 46–49.)  Inmates have personal access to disinfectants that they can use to clean their cells.  (*Id.* ¶ 46–47.)  All inmates and staff are provided with face masks.  (*Id.* ¶ 50.)  Inmates who present with symptoms consistent with COVID-19 infection are housed in a separate isolation unit.  And new inmates are placed in a 14-day quarantine before they are released into the general population.  (*Id.* at 8–9, ¶¶ 23–25.)

While Defendant may be at a somewhat higher risk of serious complications from COVID-19 as compared to the general prison population, the Court does not believe that his particular condition and circumstances provide an extraordinary and compelling reason to justify freeing him from incarceration at this time.  Defendant is 42 years old, which puts him significantly below the high-risk age group (65 years or older) identified by the CDC.[3]  Defendant cites the CDC website for the proposition that pulmonary hypertension (high blood pressure in the arteries of the lungs and right side of the heart[4]) puts one at a higher risk for serious illness resulting from COVID-19,[5] but

---

[3] *Groups at Higher Risk for Severe Illness*, Centers for Disease Control and Prevention, *available at* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html (last updated May 14, 2020).

[4] *Pulmonary hypertension*, Mayo Clinic, *available at* https://www.mayoclinic.org/diseases-conditions/pulmonary-hypertension/symptoms-causes/syc-20350697 (last updated March 20, 2020).

[5] Centers for Disease Control and Prevention, *supra* note 3.

Defendant does not assert that he suffers from *pulmonary* hypertension.  (*See* ECF Nos. 89, 94.)  Moreover, Defendant does not dispute that FCI Elkton has taken the thorough measures outlined above in order to curtail transmission of the virus.

While one study cited by Defendant indicates that 50% of a group of about 1,500 patients hospitalized with COVID-19 had high blood pressure (ECF No. 94 at 6), the Court does not find this statistic to be dispositive in light of the other considerations weighing against granting Defendant relief in this case.  This is especially so given that Defendant fails to provide the Court with any details about the severity of his condition.  Indeed, many courts have now held under similar—as well as under far more compelling (from the defendants' perspectives)—circumstances, that prisoners are not entitled to compassionate release.  *See, e.g.*, *United States v. Roberts*, 2020 WL 1700032 (S.D.N.Y. Apr. 8, 2020) (denying compassionate release to HIV-positive defendant in a facility with confirmed COVID-19 cases); *United States v. Credidio*, 2020 WL 1644010 (S.D.N.Y. Apr. 2, 2020) (denying compassionate release where there were confirmed cases in the facility); *United States v. Korn*, 2020 WL 1808213 (W.D.N.Y. Apr. 9, 2020) (denying compassionate release where defendant suffered from a serious heart condition and his facility had confirmed cases); *United States v. Hays*, 2020 WL 1698778 (S.D. Ala. Apr. 7, 2020) (similar); *but see, e.g.*, *United States v. Jenkins*, — F. Supp. 3d —, 2020 WL 2466911 (D. Colo. May 8, 2020) (Kane, J.).

Should Defendant's medical conditions in the future become materially more serious, or should FCI Elkton's COVID-19 situation become more dire from a infectious disease perspective, this Order does not preclude Defendant from seeking similar relief at such time.  For now, however, the Court concludes from the totality of the

circumstances present in this case that Defendant is not entitled to compassionate release from custody under § 3582.

### III.  CONCLUSION

For the reasons set forth above, the Court DENIES Defendant's Motion to Reduce Sentence (ECF No. 87).

Dated this 18th day of June, 2020.

BY THE COURT:

William J. Martinez
United States District Judge